And we move to the final case this morning, U.S. v. Lopez. Good morning, your honors, counsel, may it please the court. My name is Adam The question here is whether Mr. Lopez was properly designated as a leader under the United States sentencing guidelines. And I think it appropriate to discuss a stray reference coming out of the PSR that a law enforcement officer characterized Mr. Lopez as, quote, the man behind the curtain. And then that phrase was repeated at sentencing both by the government as well as the district court. But in reality here, one of two things happened. Either the curtain was actually never pulled back, not meeting the government's burden by a preponderance of the evidence of demonstrating leadership here, or what amount of curtain was pulled back showed a man, not a wizard. It was not that leadership necessary for the finding. And there are a number of standards that the court uses under NOBLE with regard to the leadership standard. And this is with regard to the level of control and leadership, not the number of individuals which was met here. But instead, the amount of leadership or lack thereof. And it's any of a number of things from recruitment, greater proceeds, direction and control, so on and so forth. I like to sort of summarize those as the individual has more money, they bring in more people, and they have more control. Sort of three pots of information. And all three of those pots really are not present here and were not demonstrated by the actual evidence in the record. The government made several claims in the case with regard to Mr. Lopez's degree of control, his alleged recruitment of individuals, and so on. But what they cited to actually did not demonstrate or meet those claims. They cited to the original criminal complaint involved in the overall case before this was separated into a separate case, and that is included as Appendix B. It also cited to Ms. Anguiano's Santiago proffer, wherein there are summaries of her grand jury transcripts, as well as apparently alleged statements on behalf of Mr. Lopez's brother, Basilio Lopez Rios. However, and I think it interesting actually that the government's case that we then cite to as well in the reply, Nagitsia, hopefully I'm pronouncing that correctly, actually is a good demonstration here of what would meet the standard for leadership in a case like this. The government relies on the case to demonstrate that recruitment, perhaps enough, would be subject or would be capable of demonstrating leadership here. That is an important thing, although that's actually not enough. In that case, the individual not only recruited multiple individuals into the criminal activity, but also provided extensive training and extensive direction. And so the actual factors and how they played out in that case I think are important because that was not present here. And secondly, Nagitsia actually involved a two-day sentencing hearing involving actual law enforcement testimony, multiple proffers and multiple safety valve proffer statements, as well as what this court characterized as extensive evidence. In Mr. Lopez's case, all we have are the wiretap summaries, and as the government itself concedes, there is not a greater share of proceeds demonstrated by the record on behalf of Mr. Lopez. So with regard to more money, that's not present. With regard to recruitment, it's pretty clear that there was no recruitment on behalf of Mr. Lopez, despite characterizations to the contrary. For example, Ms. Anguiano's nieces, who served as translators for her in calls with Mr. Givens, the buyer for Mr. Lopez and the Lopez organization, I guess, or the two individuals, Lopez and Lopez Rios. The very fact that you call it the Lopez organization sounds like he's an organizer or leader. Shorthand, poor choice of phrase, Your Honor, but Lopez and Lopez Rios, essentially. The way this breaks down is Lopez and Lopez Rios were approached by Anguiano on behalf of Mr. Givens. In fact, Ms. Anguiano actually approached Lopez Rios Basilio. At that juncture, the brothers discussed whether to engage in those transactions, and they did. The interesting question with regard to recruitment is Ms. Anguiano only used interpreters with Mr. Givens. Yet, her relationship with Mr. Givens greatly predated any relationship or ongoing activity with Lopez and Lopez Rios. Yet, the district court actually held and stated that Mr. Lopez recruited the nieces to be involved in the activity, whereas Ms. Anguiano apparently did not speak English or sufficient English to engage with Mr. Givens, an individual she had been working with and effectively was an independent contractor for well before either of the Lopez brothers were involved. So it strains credibility to believe that Mr. Lopez was the instigating cause for the nieces to become involved, let alone no other affirmative evidence of that fact. With regard to control, so I've talked about more people, I've talked about more money. With regard to control, the possible individuals here are Givens' courier, to which there was no direct communication or connection with Mr. Lopez, frankly, or with Anguiano or with Basilio apart from during the actual deliveries. Givens himself, which is a leader and sort of the central figure in this particular case, had multiple suppliers that were all supplying him distribution quantities of controlled substances. The government characterizes Lopez as sort of the individual who dictates certain things to Givens, whether it be locations or dates of transactions or any of a number of things. But again, when you sort of look at the underlying citations and the actual wiretaps and the summaries contained in the complaint, instead what you have is just a buyer-seller relationship. For example, on Appendix B, 86 through 96, there's an ongoing discussion between Lopez and Givens where there's a discussion of terms, of logistics, not Mr. Lopez directing Givens. The buyer-seller argument is an argument against a conspiracy finding as a factual matter. It has no application here. That is one correct application. There are situations like in Weaver, for example, where this court discussed that the ongoing relationship between a buyer and seller, perhaps not as formally characterized, as well as knowledge of extensive transactions and ongoing activities and sort of down the supply chain sort of uses for the controlled substance, was insufficient for a leadership finding. So while the buyer-seller, the more sort of formalized or formally characterized argument is towards conspiracy, the nature of a just strictly buyer-seller relationship is insufficient. There needs to be more. There needs to be that demonstration of control, as this court has stated, telling people what to do when it's done and determining when it was done successfully. Right, and the district court made those findings here based on the wiretap and other evidence in the case that your client is a chemo-quantity supplier to Givens who's downstream in the organization and he's the one who cut out Miss, what's her name? Miss Aguiar. Aguiar after the stop was made and he's the one who did all the troubleshooting when there arose issues about the quantity of the cocaine that was being supplied and he's the one who directed the activities of co-conspirators based on the conversations in the wiretap recordings. That's correct, Your Honor. It seems like there's enough for a leader organizer here based on... Those were the district court findings. However, the problem with that fact is that when you actually look at the wiretaps, those findings are inconsistent with what the wiretaps actually show. Similar to the situation with regard to the recruitment of nieces, there was no evidence where Mr. Lopez was the instigating cause for the nieces being brought into the organization. Similarly, with regard to characterizations of exclusion of Miss Aguiano, the actual wiretap evidence demonstrates that both individuals removed her from... That's on the complaint at pages 79 and 80. That's your argument. We have a district judge making the findings that he secured, Lopez secured the services of other delivery people. Yes, we're saying that those findings are absolutely and clearly erroneous given the actual evidence in the record. They are not plausible given the information in the record. Again, with regard to the control over Aguiano, with regard to any control dynamic with regard to his brother Basilio, with regard to any control dynamic with regard to Gibbons, with regard to recruitment, those were all based upon characterizations made by the government that do not have actual evidentiary support. That evidentiary support, again, was the complaint, the Santiago proffer, that information actually contradicts or at least does not demonstrate what the government and then district court characterize it does. What about Aguiano, is it? Aguiano, yes, sir. He cut her out of the chain and went directly, right? There was a traffic stop at some point wherein Basilio Lopez Rios' brother and Ms. Aguiano were picked up. Ms. Aguiano was released, Mr. Lopez Rios was arrested, but the actual wiretap information, we have a summary proffer from Ms. Aguiano saying it was Mr. Lopez, but the actual wiretap information demonstrates they, there are references to the brothers jointly and collectively as removing her from the organization. Okay, so that's where you're trying to make this a joint thing as opposed to putting him in a higher position to do that, I guess. Essentially, it's that... Putting them together takes him out of the leadership? Correct. He exercised no greater control over the organization relative to the individuals. It was Gibbons as a downstream receiver of controlled substances, Ms. Aguiano as an independent contractor, and the Lopez, and Lopez Rios' brothers acting collectively. Yes, sir. Thank you. Thank you, counsel. Good morning. May it please the court and counsel, my name is Raj Ladd. I represent the United States in this matter. We're here on a claim that the district court clearly erred in applying the organizer-leader enhancement, and I submit that it did not because it found several facts in a detailed oral ruling that spans several pages supporting the application of that enhancement. I want to tick off a few things, but then I'd also like to respond to some of the defendant's specific arguments here. It's clear the district court found, and it's supported by Ms. Aguiano's own statements as well as corroborated by the contemporaneous wire interceptions, that it was the defendant who first had to approve supplying Gibbons through Aguiano. She approached Basilio Lopez Rios, but they couldn't move forward until Mr. Lopez Rios received the defendant's approval, and then later when he became suspicious of Aguiano, it was the defendant who made the decision to exclude her. There are references today on the wiretaps summarizing it, but Ms. Aguiano says it was the defendant, and I submit it's not unusual to refer to an organization in the collective at times rather than breaking out who the exact decision-maker was. We also have the fact that the defendant was the one who called the shots with regard to the relationship with Mr. Gibbons, and that's where I want to clear something up. The district court did not find that the defendant was a leader because he was directing the activities of Mr. Gibbons. What the district court found is that the defendant clearly held the highest position in the Lopez, Lopez Rios, Aguiano and other courier conspiracy because he was the one who had the authority to say for example, this money was short, but I'm not going to collect on it, this cocaine was inferior, but we're going to submit, you know, come back and return it. By contrast, the conversations that Mr. Gibbons had with Vasilio Lopez Rios were low-level ministerial, you know, I'm around the corner, I'm almost there to make the delivery. And then there's this third factor which I think is very important that the district court found, recruiting other couriers after Aguiano became unavailable because he kicked her out, and then Lopez Rios became unavailable because he was arrested. The uncontroverted evidence from the wire interceptions and surveillance, which was never contested by the defense before, is that other people made those deliveries. And in one of those phone calls, it's summarized in the government's brief on page 16 to 17, Mr. Lopez said he was sending his niece to make a delivery and then a female who had never previously come up as part of the investigation was observed by surveillance actually making that delivery. So I think it's a very well corroborated statement. I think the confusion with the nieces comes up because Ms. Aguiano also relied on some of her nieces to translate and that is not something that there's any evidence that the defendant directed her to do, but he doesn't need to micromanage every manner by which she performs her duties to be the organizer leader. So I think the nieces is just a little bit of confusion about there being multiple nieces at play here. So because this evidence, which was largely uncontested at the sentencing, supports the district court's detailed factual findings, there is no clear error here and I ask that the district court's opinion be affirmed. Thank you, counsel. Any time left? Thanks to both counsel. The case is taken under advisement and the court will begin recess. Thank you.